## WISE v. CAIN.
### No. 9727.

Court of Civil Appeals of Texas. Austin.

June 2, 1948.

Rehearing Denied June 23, 1948.

881.

Knetsch, Jandt & Janssen, and Elbert R. Jandt, all of Seguin, for appellant.

Slater & Slater, of Luling, for appellee.

## McCLENDON, Chief Justice.

Suit by Homer Wise (a married man) against Dottie B. Cain (described in Wise's petition as a "single woman", and addressed and referred to throughout the trial as Mrs. Cain) to cancel a certificate of title to a 1940 Buick sedan (allegedly worth $1,000), issued by the State Highway Department to Dottie B. Cain, and to vest the legal and equitable title in Wise. In his verified petition Wise alleged that defendant "through fraud and misrepresentation" obtained the certificate from him. This allegation was abandoned at the beginning of the trial; and the sole issue presented was whether the evidence supported the trial court's finding of an executed gift of the car from Wise to Mrs. Cain; Wise not personally appearing before the notary certifying to his affidavit of transfer of the certificate to Mrs. Cain, but instructing Mrs. Cain to have it notarized. The trial was to the court, the judgment was in favor of Mrs. Cain, and Wise has appealed.

The salient facts were: Wise was engaged in hauling produce out of San Antonio, his then headquarters. Mrs. Cain lived at Luling, where she was employed as clerk and checker in a grocery store. According to Wise they met on the produce market in San Antonio in August 1945. He bought the car in San Antonio June 13, 1946, for speculation purposes, so he testified. About a month before that he drove the car to Luling, showed it to Mrs. Cain, asked her how she liked it, and upon being answered that she did, he said, ".I think I will just buy it for you." "And he did." With the exception of a few weeks when it was being repaired, she had possession of the car from that time until it was sequestered in this suit in November 1947. It appears that Wise and Mrs. Cain had been "going together" for some time before he purchased the car, and thereafter she would drive it to San Antonio and other places to meet him. The assignment of title from Wise to her was made in San Antonio April 15, 1947. At that time the car was still in Mrs. Cain's possession. The occasion for the transfer as detailed by her was: "He said the car was mine and in order for me to do whatever I wanted to do with it, he would just transfer it over into my name, so it would be convenient for me. * * * He told me to bring it (the certificate of title) to Luling, anywhere I wanted to, to have it notarized." A month later Wise executed an assignment of an insurance policy on the car to Mrs. Cain. In the oral argument appellant's attorney stated that there was nothing in the record to show that the policy assigned covered the car in suit. The following record showing is conclusive to the contrary: When asked on cross-examination, whether he did anything about the insurance on the car, Wise stated that he did not remember whether the insurance was transferred, "possibly I did." The assignment, which was in the form of a "Standard Automobile Endorsement," was then offered by appellee. Appellant's counsel first objected that it "doesn't seem to be on its face pertinent to the question here.

I would like to look over the paper." Appellee's counsel: "It has to do with the assignment of an insurance—those are the papers and the policy." Appellant's counsel: "I am going to object to it because this assignment of interest; the question we have before the court is title to this automobile and not title to the insurance policy." The objection was overruled and the assignment introduced. While it did not identify the car, the policy was identified by number. It gave the name of appellee as assignee, her residence and occupation, and that the car would be "principally garaged" in Luling. It was signed by appellant as assignor and by appellee as assignee, and endorsed by the insurance agent as effective from 12:01 a. m. Standard Time, May 14, 1947. Appellant was then interrogated regarding the assignment, the first question being whether that was his signature to the assignment "of insurance on this car." Answer, Yes. He then explained that his reason for making the transfer was "for the protection of the automobile" as the place of its principal garaging was changed from San Antonio to Luling. This explanation was, to say the least, extremely sleazy. There was no basis for the assignment to appellee if title was not in her. Change of place of principal garaging could have been made without assignment of title. In fact, after the assignment, appellant could not legally have recovered on the policy. Neither could appellee, if in fact, as asserted by appellant, she was not the owner of the car.

The evidence establishes every element of an executed gift of personal property inter vivos, unless, as appellant contends, the element of the false certificate of the notary rendered the gift executory. We have reached the conclusion that the trial court correctly held that appellant was "estopped to question the proper execution and validity of said certificate of title," and that he made a completed gift of the car to appellee, under which both the legal and equitable title vested in her. We are not questioning the soundness of appellant's contention that under the Motor Vehicle Certificate of Title Act (Vernon's Ann.P. C., art. 1436—1) there can be no valid transfer of the legal title except by compliance with the Act. Nor do we question the asserted general principle that detriment is essential to equitable estoppel. It is of course true that to constitute a notarial certificate to an affidavit valid, the affiant must appear personally before the notary; absent which the certificate is false, and its execution a criminal offense, not only on the part of the notary, but on that of those participating in the commission of the crime. Certainly Wise was as much particeps criminis to the false certificate as was Mrs. Cain. We do not condone in any sense her action or that of the notary. We merely hold that Wise was not in position to question the validity of the certificate. He could not take advantage of his own wrong, nor invoke equitable or legal aid to cancel the certificate. Appellant cites Hoskins v. Carpenter, Tex. Civ.App., 201 S.W.2d 606. That case differs from this in two essential respects: 1) the certificate of title was not notarized at all; and 2) the jury specifically found that the donor (since deceased) did not intend to convey the title. Also cited is Humble Oil & Refining Co. v. Downey, 143 Tex. 171, 183 S.W.2d 426, 431. That decision related to a married woman's separate acknowledgment to a deed to her separate property and rested solely upon the wording of arts. 6605 and 6608, Vernon's Ann. Civ.St. It was by a divided three-judge court, Mr. Justice Sharp dissenting. The opinion of Chief Justice Alexander concurring with Mr. Justice Critz, reads: "I am by no means pleased with the result of this case, but I believe the matter is foreclosed by the provisions of Revised Statutes Articles 6605 and 6608 and the former decisions of this Court construing these statutes. If an injustice results from this decision, the responsibility therefor rests with the Legislature in retaining the above-mentioned statutes."

It is not necessary to repeat the facts of that case. The decision has no controlling effect here.

The trial court's judgment is affirmed.

Affirmed.