Jay SHELTON, d/b/a Comanche Truck Sales, Appellant,

v.

SWIFT MOTORS, INC., d/b/a Lupe & Gil's Auto Sales, Gilbert P. Arredondo, Sr., Individually, Guadalupe Urteaga, Individually, and Anne Arredondo, Individually, Appellees.

No. 04–82–00292–CV.

Court of Appeals of Texas, San Antonio.

March 21, 1984.

Rehearing Denied May 31, 1984.

Stanley Eisenberg, San Antonio, for appellant.

William H. Ferguson, San Antonio, for appellees.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from an instructed verdict granted the appellees at the close of appellant's case in the trial below. Plaintiff/appellant, Jay Shelton, d/b/a Comanche Truck Sales (Shelton), brought suit against defendants/appellees, Swift Motors, Inc., d/b/a Lupe & Gil's Auto Sales, Gilbert P. Arredondo, Sr., Guadalupe Urteaga, and Anne Arredondo, alleging that they altered a title to a motor vehicle, or accepted a title they knew to be altered. Further, appellant contends that they were negligent in accepting said title; that defendant/appellee Anne Arredondo knowingly notarized a false and forged affidavit of fact; that they knowingly and willfully delivered to a purported bona fide purchaser the altered title to said motor vehicle, along with the forged affidavit of fact; and that they acted willfully and maliciously. He prayed for actual damages, exemplary damages of at least $100,000.00, attorney's fees of at least $5,000.00, and interest and costs.

The cause was called for jury trial on March 1, 1982. On March 2, 1982, appellant rested his case. Appellees filed their written motion for instructed verdict on March 3, and after a brief argument, the court granted the motion.

A brief review of the facts in this case will help to put the relationship of the parties in perspective. On May 8, 1980, a 1976 Chevrolet pickup truck came into the possession of Shelton. He testified that he purchased the pickup truck from another for $700.00. Shelton testified that he repaired the pickup truck and in doing so expended approximately $1,150.00. On September 17, 1980, Shelton transferred title in the vehicle to one James E. Edmonds, who was not made a party to this suit. Edmonds paid Shelton by check in the amount of $3,100.00. This amount covered the purchase price of the pickup truck in question, and additionally, the purchase price of a 1970 Dodge pickup truck, and commissions due Shelton for work he had done for Edmonds. The check is dated September 19, 1980. Edmonds then sold the subject pickup truck to appellees for $900.00. While the bill of sale is dated September 27, 1980, the actual date of sale was never conclusively proven at trial. When Edmonds presented himself at the appellees' lot, and attempted to sell the subject pickup truck to them, he was told that a new title certificate had to be acquired because the only assignment block on the reverse of the certificate that had not been used was for a dealer-to-dealer transfer only. Appellee Anne Arredondo then testified that Edmonds represented to them that such would not be necessary since he was Shelton's agent. At Edmonds' suggestion, his name on the assignment was lined through and that of Lupe &

Gil's Auto Sales was typed in. To explain the alteration to the title, Edmonds executed an affidavit of fact.[1] Edmonds swore that the information in the affidavit was true and appellee Anne Arredondo took his acknowledgment on the affidavit. The affidavit is dated September 20, 1980.

On September 26, 1980, the bank on which Edmonds' $3,100.00 check to Shelton was drawn, cancelled the endorsement. It is not evident when Shelton received actual notice of the cancelled endorsement. Shelton testified that at some point after finding out that the $3,100.00 check he received from Edmonds was worthless, he located and repossessed the 1970 Dodge truck sold at the same time as the subject pickup truck. On October 6, 1980, appellees sold the subject pickup truck to a bona fide purchaser. On October 30, 1980, Shelton secured a temporary restraining order from the 250th District Court of Travis County, Texas, restraining the Department of Highways and Public Transportation from issuing a new certificate of title for the subject pickup truck to Edmonds. The Travis County district court later issued a temporary injunction to the same effect.

■■■ Appellant submits thirteen points of error. Since many are substantially the same allegation referring to the four defendants, they will be considered together. In points of error one, four, seven, and ten, appellant alleges the trial court erred in granting the appellees' motion "because the evidence introduced at trial was legally insufficient to support Appellee's motion for instructed verdict." The appellant seems to be arguing that the instructed verdict was granted on the basis of evidence introduced by appellee and that such evidence was insufficient. An instructed verdict is granted at the close of a plaintiff's case because a plaintiff has failed to raise controverted fact issues, and the defendant is thereby entitled to judgment as

a matter of law. *See Harvey v. Elder*, 191 S.W.2d 686, 687 (Tex.Civ.App.—San Antonio 1945, writ ref'd); 3 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 11.25 (rev. 1983). There is no requirement that a motion for instructed verdict be supported by sufficient evidence. It may be granted on the basis of a lack of sufficient evidence to raise controverted fact issues which are necessary to entitle plaintiff to judgment. *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Accordingly, we find that appellant's points one, four, seven and ten, are wholly without merit and are therefore overruled.

In points of error two, five, eight and eleven, appellant contends that the trial court erred in granting the motion for instructed verdict because the instructing of a take nothing verdict is against the great weight and preponderance of evidence as to be clearly wrong and unjust, and that the plaintiff introduced evidence conclusively proving his action for fraud and conversion, or in the alternative, negligence.

■■■ On appeal from an order granting an instructed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was granted. Any inferences that may be drawn may only be drawn against the propriety of granting the verdict, and any conflicts in testimony are to be disregarded. *Edwards v. Shell Oil Co.*, 611 S.W.2d 904, 905 (Tex. Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Rowe v. Harris*, 576 S.W.2d 172, 175 (Tex. Civ.App.—Waco), *reversed on other grounds*, 593 S.W.2d 303 (Tex.1979). If the record contains any testimony of probative force, either direct or circumstantial, in favor of the party against whom the instructed verdict was granted, we must hold that the instructed verdict was improper.

---

**1.** An affidavit of fact is a document relating to a change in the title. It obviates the need for a new certificate of title in the event of minor changes. The authority for the use of an affidavit of fact is found in TEX.REV.CIV.STAT.ANN. art. 6687–1, § 55 (Vernon 1977), the depart-

ment's general rule making authority. *See also* MOTOR VEHICLE DEPARTMENT, TEXAS DEPARTMENT OF HIGHWAYS & PUBLIC TRANSPORTATION, CERTIFICATE OF TITLE MANUAL § 55(I)(c), at 185.

*Air Conditioning, Inc. v. Harrison-Wilson-Pearson,* 151 Tex. 635, 640, 253 S.W.2d 422, 425 (1952); *White v. White,* 141 Tex. 328, 331, 172 S.W.2d 295, 296 (1943).

■ Where it is determined that reasonable minds may differ as to the truth of conflicting facts, an issue is presented for the jury to determine. *Henderson v. Travelers Insurance Co.,* 544 S.W.2d 649, 650 (Tex.1976); *cf. Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 370, 207 S.W.2d 365, 367 (1948). It is proper to grant an instructed verdict, however, where reasonable minds can draw only one inference from the evidence presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

Viewing the evidence in the light most favorable to the appellant, the record reflects that appellant sold the truck in question to a man named Edmonds. Further, that appellant intended to transfer title to the truck to Edmonds; that Edmonds paid for the truck by check; that Edmonds took the truck to appellees' place of business some days later and sold it to them; that Edmonds told appellee, Anne Arredondo, that he was an agent for appellant; that at his suggestion, his name on the second transfer block on the reverse of the certificate of title was lined through and the name of the appellees' business (Lupe & Gil's Auto Sales) was substituted therefore; that an affidavit of fact was prepared to explain the alteration of the title; that Edmonds swore to the truth of the statements in the affidavit; that appellee Anne Arredondo took his acknowledgment on the affidavit; that the appellees did not know appellant; that appellees did not know that Edmonds had given appellant a bad check in payment for the truck; and that appellees sold the truck to a bona fide purchaser.

From the evidence adduced at trial, we cannot conclude that appellant, as he alleged in his brief "conclusively proved" a cause of action against the appellees for fraud, conversion, or negligence. From the evidence, reasonable minds could only come to one conclusion, to-wit: that appellant

was suing the wrong party. From the evidence presented, there was no fact issue raised to determine whether his damages were caused by the appellees.

■ We agree with appellees that appellant, to maintain an action for conversion, had to plead and prove, generally, that he was the owner of the truck and had either possession, or the right to immediate possession thereof at the time of the conversion. *Overseas Orders, Inc. v. Anaya,* 470 S.W.2d 72, 73 (Tex.Civ.App.—San Antonio 1971, no writ). Nowhere in appellant's amended petition did he allege conversion or that he was entitled to possession. In fact, the only time the appellant had possession of the truck in question was the period between the time he acquired the truck from his predecessor in title and the time when he transferred the title to Edmonds. Appellant even states, in his amended petition that he transferred title to "James E. Edwards [sic] . . . [who] paid Plaintiff by check."

■ It is undisputed that title passed as between appellant and Edmonds. There was an intent to transfer title by one with the right to possession to another, and the actual possession of the truck was transferred to Edmonds. The complaint of appellant relates to the check and the fact that Edmonds was not an authorized signatory on the account on which the check was drawn, and it was therefore returned. There was, however, no pleading or proof of conversion on the part of appellees by appellant.

■ Appellant's fraud claim seems to be based on an alleged forgery perpetrated by appellee Anne Arredondo. Appellant alleged that the appellees forged an affidavit of fact so as to enable an altered title to be passed to a bona fide purchaser. Appellees contend that there is no evidence that one of them forged the affidavit of facts. We agree. The evidence clearly shows that the affidavit was prepared at the suggestion of Edmonds. It was he who swore to the truth of the statements contained in the affidavit. Appellee, Anne Arredondo's

only act was to take his acknowledgment. The purpose of an acknowledgment, generally, is to authenticate an instrument as being the act of the one executing the instrument. *Punchard v. Masterson,* 100 Tex. 479, 481, 101 S.W. 204, 205 (1907). In the case of a motor vehicle certificate of title, it is a prerequisite to validity, and no more. *See* TEX.REV.CIV.STAT.ANN. art. 6687-1, § 33 (Vernon 1977). Edmonds stated that he was the agent for Comanche Truck Sales, and in the affidavit, he swore:

### AFFIDAVIT OF FACTS

A statement to verify that a mistake was made on title # 88276703. But has been corrected, with the acknowledge [sic] of Comanche Truck Sales. # Circumstances which are not included in the above:

Said vehicle a 1976 Chev p/u ser CCL146S109178 was void to Mr. Edmonds but said vehicle was sold to Lupe & Gil's Auto Sales of San Antonio, Texas.

| SIGNED | Comanche Truck Sales |
| --- | --- |
| | NAME OF FIRM |

p23–680

| San Antonio, Texas | /s/ [Edmonds] |
| --- | --- |
| ADDRESS CITY STATE | AGENT FOR FIRM |

Subscribed and sworn to before me this 20 day of Sept 1980

That the above statements are true and correct.

/s/ [Anne Arredondo]
NOTARY PUBLIC OF
BEXAR CO., TEXAS

Appellant contends that appellee Anne Arredondo notarized "said false and forged affidavit knowing same to be false and without requiring the purported affiant to appear before her." In reviewing the record in the light most favorable to appellant, we can see no instance where appellee, Anne Arredondo, under cross-examination by counsel for appellant, ever wavered from her position that she did now know that the affidavit was false. Appellant argues that appellee Anne Arredondo was under a duty to inquire as to the authority of Edmonds in acting as his agent. We hold that appellee Anne Arredondo was under no duty to inquire into Edmonds' authority. The only effect of Arredondo's notarizing the affidavit was to affirm that Edmonds swore to her that the statements were true.

Appellant also alleged that the appellees "knew the true facts and acted willfully with intent to defraud the Plaintiff of his motor vehicle...." There is no evidence that any of the appellees knew that the affidavit was forged. Even more fatal to the appellant's claim is the fact that there is no evidence whatsoever that appellees knew the appellant; or that they knew that Edmonds had defrauded him; or that they damaged appellant in an intentional manner, if at all. Further, we find that there is no evidence of negligence on the part of appellees in failing to inquire into Edmond's authority. Appellant's points of error two, five, eight and eleven are overruled.

In points of error three, six, nine and twelve, appellant argues that the trial court erred in granting the motion for instructed verdict because the motion failed to state a legal or factual ground on which it could be based. We disagree. Appellees' motion is substantially similar to their brief filed in this cause. The motion in effect argues that, although appellant may have been damaged, his damages are not attributable to any act or omission by appellees. Appellant's points three, six, nine and twelve, are overruled.

In point of error thirteen, appellant alleges the trial court abused its discretion in denying his motion for leave to file a trial amendment. The amendment contained four paragraphs, alleging: conversion, ratification of the alteration of title, fraud, and prejudgment interest. Appellant refers us to *American Produce & Vegetable Co. v. J.D. Campisi's Italian Restaurant,* 533 S.W.2d 380, 386 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.), for the proposition that the trial court abused its discretion in disallowing the filing of his trial amendment. *American Produce* is not on point as it involved the submission of special issues to the jury that were not supported by the pleadings. The jury answered the issues favorable to the appellee, and the trial court in that instance entered a judgment non obstante veredicto. On appeal, the cause was reversed and remanded, the ap-

pellate court holding that the trial court abused its discretion and that the trial amendment should have been allowed. In that case, however, the appellate court held that there was previously introduced evidence that made it an abuse of discretion for the trial court to refuse to permit the filing of the proffered trial amendment so as to conform the pleadings to the evidence. *Id.* at 386. We find in the instant case that there was no evidence introduced by appellant that even remotely supports the allegations contained in his trial amendment.

Appellant also cites *Simon v. Watson*, 525 S.W.2d 210, 213 (Tex.Civ.App.—Dallas 1975, writ dism'd), for the proposition that the "complaining party" must show that real harm would result from the filing of the pleading. In *Simon*, the appellant therein was complaining because the trial court permitted the opposing party to file a trial amendment. The court of civil appeals found that the complaining party lodged no objection to the filing of the trial amendment. The appellate court further found that the only objection advanced by appellant was to the effect that since the trial had ended, the trial court was without authority to permit the filing of a trial amendment. *Id.* at 212. In the instant case, the record reflects that appellees objected to the filing of the amendment, and argued that the filing of the trial amendment would prejudice them in maintaining their defense on the merits.

*Johns-Manville Sales Corp. v. R.J. Reagan Co., Inc.*, 577 S.W.2d 341, 344 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.), is cited by appellant, again, for the proposition that the trial court erred in not granting the trial amendment. In that case, appellant was refused the right to file amended pleadings four days before trial, when he had had three months to file amended pleadings. Appellant's reliance on *Johns-Manville Sales Corp.*, is misplaced.

 After reviewing the appellant's brief, the cases cited, and the record, we hold that the trial court did not abuse its discretion in refusing leave to file the trial amendment. Appellant's point of error thirteen is overruled.

Accordingly, the judgment of the trial court, granting the defendants/appellees an instructed verdict and ordering that the plaintiff/appellant take nothing, is affirmed.[2]

**2.** We note that all argument and authorities in support of each point of error were briefed together by appellant under one argument. We could have ordered a re-briefing of his points of error in accordance with TEX.R.CIV.P. 418(e), 422. It was with great difficulty that this Court separated the argument and authorities for each point of error.